**James R. HUCKER, Plaintiff,**

v.

**CITY OF BEAUMONT,
et. al., Defendants.**

**No. Civ.A. 1:99CV40.**

United States District Court,
E.D. Texas,
Beaumont Division.

April 11, 2001.

George Michael Jamail, Reaud Law Firm, Beaumont, TX, Richard M. Schechter, Houston, TX, for plaintiff.

Spencer Granville Markle, Markle Ramos & Zito, Houston, TX, for defendant Correctional Medial Services.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is Defendant Correctional Medical Services, Inc.'s, Motion to Limit the Testimony of Edward M. Strehlau, R.N. [Dkt # 97], Defendant Correctional Medical Services, Inc.'s, Motion to Limit the Testimony of Jerry S. Findley [Dkt # 98], Defendant Correctional Medical Services, Inc.'s, Supplemental Motion to Limit the Testimony of Jerry S. Findley [Dkt # 105] and Defendant Correctional Medical Services, Inc.'s, Supplemental Motion to Limit the Testimony of Edward M. Strehlau, R.N. [Dkt # 106], and the Court having reviewed the motions is of the opinion that each and all of said motions be DENIED.

## I. Background.

Plaintiff claims that, on August 1, 1997, he fell and hurt his leg outside his Beaumont, Texas, home and that some time shortly thereafter, a piece of furniture in his home caught fire. The fire department and police responded and extinguished the fire, while Mr. Hucker remained outside in some pain and under the care of emergency medical technicians. An arson investigator determined that he believed the fire was purposefully set and, with the Beaumont Police, arrested Mr. Hucker and transported him to the Jefferson County Jail without taking him first for medical attention. Plaintiff Hucker alleges that he was required to crawl into the jailhouse under his own power, was initially shackled to a bench and was later incarcerated for three days before being seen by a doctor who ordered his hospitalization. He asserts that he is now wheelchair bound. He is suing the City of Beaumont, Jefferson County, Correctional Medical Services, Inc. ("CMS"), and various individuals who are either associated with the various fire and law enforcement agencies involved or are employed by CMS.

Defendants CMS and four of its employees seek to limit or strike any testimony related to Mr. Hucker's medical diagnosis or causation of his injury by a nurse and by an emergency medical technician on the basis that they are being offered as expert witnesses and are unqualified in that capacity.

## II. Form of Motions.

In the Eastern District of Texas, when allegations of fact not appearing in the record are relied upon in support of a motion, all affidavits and other pertinent documents shall be filed with the motion. Any attached materials should have the portions highlighted in the copy provided to the court, unless the citation encompasses the entire page. Only relevant, cited-to excerpts of attached materials should be attached to the motion. *See* E.D.Tex. Local R. CV–7(b).

CMS' failure to comply with this regulation has made it difficult to discern how the defendants' motions are supported. In the original motion regarding Edward Strehlau, CMS' motion refers to Mr. Strehlau's curriculum vitae, which was identified as "Exhibit A" to the motion. There was no Exhibit A attached to the motion. In both the original motions regarding Edward Strehlau and Jerry Findley, CMS makes broad assertions about those individuals' lack of medical experience. In Mr. Findley's case, CMS attached the entire 38–page deposition it took on January 4, 2001, without highlighting, annotation or explanation of its significance. The deposition was provided in the "multi-page" format in which four pages of deposition testimony were reproduced per page, front and back, of the attachment. This Court will not review such an entire deposition, reproduced in miniature, with a magnifying glass to glean the points CMS desires to make. In Mr. Strehlau's case, CMS attached no supporting documentation whatsoever.

The two supplemental motions attempt to rectify this to some degree by offering a summary of statements made by the respective witnesses during deposition, supported by the appropriate pages of deposition testimony. However, in neither instance does CMS make an argument connecting those statements to its conclusion that the witnesses are not "experts" beyond the fact that neither of them are physicians (although Mr. Findley is styled as "Jerry Findley, M.D." in the proposed order attached to CMS' motion). Apparently that is sufficient fuel, in CMS' eyes, to assert that neither witness can be an "expert witness" in a case

involving a physical injury. Further, the pleadings are poorly worded and include several grammatical and spelling errors which significantly cloud the meaning the defendants are trying to get across. Finally, because CMS does not apply current federal law governing the admissibility of expert witnesses, the argument presented in these sloppy documents is merely conclusory.

## III. Admissibility of Scientific Evidence and Expert Testimony.

Federal Rule of Evidence 702 governs testimony by experts. It provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

See FED.R.EVID. 702 (2000). The United States Supreme Court has interpreted Rule 702 as it applies to scientific evidence and to expert testimony.

■■■ A federal judge will act as a gatekeeper to ensure that scientific evidence offered in a case is both relevant and reliable under Rule 702. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). To do so, a court will conduct a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Id. at 592–93, 113 S.Ct. 2786. A non-exclusive and flexible set of factors will be used to make that assessment. Id. Those factors include: (1) whether a theory or technique can (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publica-

tion; (3) a consideration of the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) a consideration of "general acceptance" of the theory or technique within the relevant scientific community. Id. at 593–95, 113 S.Ct. 2786.

The U.S. Supreme Court has extended the Daubert analysis to all expert testimony. In ruling on the application of Daubert factors and analysis to engineering testimony, the Supreme Court stated that a trial judge may consider several specific factors that might "bear on" the judge's gate-keeping determination, including those noted supra. See Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 149–50, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). That refinement has been adopted within the Fifth Circuit Court of Appeals, which noted that there are many kinds of experts and expertise, that the Daubert inquiry is always fact-specific, and that the Daubert factors may not all apply. See Black v. Food Lion, Inc., 171 F.3d 308, 311 (5th Cir.1999) (applying the Daubert analysis to a physician's expert testimony regarding a theory for the source of a patient's fibromyalgia). Further, Daubert may apply to determining the reliability of experience-based testimony. Id. See also United States of America v. Matthews, 178 F.3d 295, 304 (5th Cir.1999) (noting that Daubert's "gatekeeping" obligation applies to not only scientific testimony, but to all expert testimony); Munoz v. Orr, 200 F.3d 291, 301 (5th Cir.2000) (applying the Daubert analysis to an expert's statistical methodology in a Title VII discrimination case).

■■■ In the motions at hand, CMS claims that, based on statements in their respective depositions, Mr. Strehlau and Mr. Findley will offer expert testimony as to when Mr. Hucker's displaced fracture

occurred and on what it terms "causation issues" without greater explanation. CMS claims that both individuals are "wholly unqualified to testify on these issues." As its sole offer of precedent, CMS recites the following paragraph, identically reproduced in each motion down to the individual spelling, grammatical and citation format errors reflected here:

> The Fifth Circuit has spoken on this issue. In *Christophersen v. Allied–Signal Corp.*, 939 Fed.2d 1106, 1112, 1113 [*sic*] (5th Cir.1991) serv. [*sic*] denied 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992). The Court stated "the questions ... do no [*sic*] stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question." This is because the injury [*sic*] must be into actual qualification. In *Christophersen*, the 5th Circuit noted that "although a person has a medical license this does not give them the expertise knowledge and training to testify as to every area of medicine." In this case Plaintiffs attempt to have *none* [*sic*] medical doctors testify to complex surgical issue [*sic*] and issues of causation.

*See* Defendants' original motions at section III. In its supplemental motions, CMS points out deposition testimony that each individual would defer his medical opinion to an orthopedic surgeon in diagnosing an injury such as the one at issue here and that Mr. Findley in particular does not make field diagnoses. CMS reads this to mean that because neither individual is a medical doctor with training in orthopedic surgery that neither may offer an opinion as to "when the displacement occurred." This Court does not necessarily agree.

First, the correct quotation from *Christophersen*, in context, is as follows: "[A]lthough credentials can be significant, they alone are not necessarily determinative. The questions, for example, do not stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question. This is because the inquiry must be into actual qualification—sufficient to assist the trier of fact." *See Christophersen v. Allied–Signal Corp.*, 939 F.2d 1106, 1112–13 (5th Cir.1991), *cert. denied*, 503 U.S. 912, 112 S.Ct. 1280, 117 L.Ed.2d 506 (1992), *overruled by Daubert*, 509 U.S. at 587 n. 5, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). There is nothing in this statement which requires, or implies a requirement for, a medical degree to give an opinion on a medical question. It merely states that a potential witness' actual qualifications for the type of opinion to be offered must be examined for reliability and for the ability to properly inform a factfinder.

Second, CMS has offered nothing to show that there is a "complex medical issue" related to causation. CMS also has not explained what the "causation issue" is, over which CMS seeks to limit these witness' testimony.

Third, the premise of *Christophersen* was that the rule formerly governing scientific evidence in federal court, namely the *Frye* standard requiring "general acceptance within the relevant scientific community," co-existed with the modern Federal Rules of Evidence. This reasoning was specifically addressed and disapproved by the U.S. Supreme Court in the *Daubert* opinion, which overruled *Frye*. *See Daubert* 509 U.S. at 587 n. 5, 113 S.Ct. 2786. The Fifth Circuit considers *Christophersen* to be overruled by *Daubert* except for incidental points of reasoning unrelated to the *Daubert*-type analysis. *See Munoz*, 200 F.3d at 301–02. To the extent that CMS' motions seem to require that only surgically trained orthopedic medical doc-

tors may achieve "general acceptance" as expert witnesses in a medical opinion, CMS is clearly in error. To the extent that CMS may point out, as one factor to be considered, Mr. Strehlau's and Mr. Findley's actual qualifications and experience (which CMS has hardly done) compared to those of an orthopedic surgeon, it is free to do so. However, relying solely on *Christophersen* is improper.

## IV. Conclusion.

In denying CMS' motions to limit or strike expert testimony, this Court is not accepting Mr. Strehlau or Mr. Findley as qualified expert witnesses. It remains the plaintiff's burden to prove that the qualifications, education, training, or experience of these two witnesses are sufficient, under *Daubert*, to admit them as experts who may offer opinion testimony. CMS may challenge those credentials, but must do so in accordance with a proper *Daubert* challenge.

It is, therefore,

ORDERED, that Defendant Correctional Medical Services, Inc.'s, Motion to Limit the Testimony of Edward M. Strehlau, R.N. is hereby DENIED.

ORDERED, that Defendant Correctional Medical Services, Inc.'s, Motion to Limit the Testimony of Jerry S. Findley is hereby DENIED.

ORDERED, that Defendant Correctional Medical Services, Inc.'s, Supplemental Motion to Limit the Testimony of Jerry S. Findley is hereby DENIED.

ORDERED that Defendant Correctional Medical Services, Inc.'s, Supplemental Motion to Limit the Testimony of Edward M. Strehlau, R.N. is hereby DENIED.