# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 5, 2013

No. 12-20578
Summary Calendar

Lyle W. Cayce
Clerk

THERESA CALDWELL,

Plaintiff-Appellant,

v.

UNIVERSITY OF HOUSTON SYSTEM, UNIVERSITY OF HOUSTON–MAIN CAMPUS, EDWARD CRAIG NESS, Individually and in his Official Capacity, JOHN ANTEL, in his Official Capacity, and ELAINE CHARLSON, in her Official Capacity,

Defendants-Appellees.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-2014

Before STEWART, Chief Judge, and OWEN and GRAVES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Theresa Caldwell ("Caldwell") appeals the district court's grant of summary judgment to Defendants-Appellees on Caldwell's employment discrimination claims of both disparate treatment and disparate

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20578

impact based on race and gender, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.[1]  We AFFIRM.

I.

Caldwell is a black female of at least fifty-five years of age.  She began working for Appellee University of Houston System, University of Houston–Main Campus ("the University") as an office assistant in 1983.  She currently works as the Manager of Academic Fees in the Academic Budgets/Administration and Provost Central Business Office.  Throughout her employment with the University, Caldwell consistently has received favorable employment evaluations, although she has been counseled multiple times to work on her interpersonal skills.  Appellee Edward Craig Ness ("Ness"), the Assistant Vice President of Academic Budgets and Administration, is Caldwell's direct supervisor and has been for over ten years.

While Caldwell worked in the Provost Business Office as the Academic Affairs Administrator, the University implemented a university-wide overhaul of its job classification system in March 2009.  The purpose of this overhaul was to increase the fairness of the pay grade system.  As a result, Caldwell's job assignment numerical pay grade was changed, along with forty-six other employees.  Her job duties and salary were unaffected by this change in classification.

---

[1] The district court also dismissed Caldwell's age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a), and it granted summary judgment to Appellees on Caldwell's pay discrimination claim under the Equal Pay Act, 29 U.S.C. § 206(d).  Caldwell has not challenged these rulings on appeal.  She also has not challenged the district court's grant of summary judgment in favor of the three individually-named Appellees in their individual and/or official capacities.  Specifically, any passing reference in Caldwell's brief to her claims against Ness in his individual capacity is insufficient to preserve these claims for review on appeal.  Accordingly, all of the foregoing claims are waived. *See Turner v. Quarterman*, 481 F.3d 292, 295 n.1 (5th Cir. 2007); *see also* Fed. R. App. P. 28.

No. 12-20578

In December 2009, Ness eliminated Caldwell's position of Academic Affairs Administrator and created two positions in its place: Manager of Academic Fees and Administrator of the Provost Business Office. Ness asked Caldwell to assume the manager position, and Maura Capper, a white female, was selected for the administrator position. Organizationally, the two positions are equal.

Additionally, Caldwell applied, but was not hired, for four other positions within the University:

> (1) In March 2009, Caldwell applied to be the Business Administrator for the College of Pharmacy. Shaki Commissariat, a white male, was hired instead, as he already had worked in the College of Pharmacy for two years as an accounting specialist, in addition to his sixteen years of other relevant experience.
>
> (2) In March 2010, Caldwell applied to be the College Administrator in the College of Natural Sciences & Mathematics. Joyce Collins was hired instead, and she is also a black female over the age of forty.
>
> (3) In April of 2010, Caldwell applied to be the Executive Director of Academic Budgets and Operations. Dr. Sabrina Hassumani was hired instead, and has more education than Caldwell.
>
> (4) In January 2011, Caldwell applied to be the Executive Director in the College of Arts and Sciences. Andrea Short was hired instead, having worked within that college for twelve years.

On January 27, 2010, Caldwell filed charges against the University with the Equal Employment Opportunity Commission ("EEOC"), which she subsequently amended multiple times. On January 7, 2011, the EEOC issued her a Notice of Right to Sue. The district court subsequently granted Appellees' motion to dismiss Caldwell's ADEA claim and Appellees' motion for summary

No. 12-20578

judgment on Caldwell's remaining claims alleging race and gender discrimination. Caldwell timely appeals.

## II.

We review a district court's grant of summary judgment de novo. *Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 553 (5th Cir. 2005). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001) (citation omitted). However, "[i]f the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011).

## III.

On appeal, Caldwell alleges several Title VII claims against the University. Specifically, she alleges that the University demoted her and failed to promote her based on her race, and that it employs a neutral policy or practice with a disparate impact on black women.

Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Further, an unlawful employment practice based on disparate impact is established under Title VII only if, as relevant here,

> (i) a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to

No. 12-20578

> demonstrate that the challenged practice is job related for the position in question and consistent with business necessity[.]

42 U.S.C. § 2000e–2(k)(1)(A)(i).

Where a plaintiff offers no direct evidence of the defendant's discriminatory intent, we must evaluate proof of circumstantial evidence using the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citation omitted). Under the *McDonnell Douglas* burden-shifting framework:

> [A] plaintiff must first create a presumption of intentional discrimination by establishing a *prima facie* case. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. The burden on the employer at this stage is one of production, not persuasion; it can involve no credibility assessment. If the employer sustains its burden . . . the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Alvarado*, 492 F.3d at 611 (internal quotations and citations omitted). While the "intermediate evidentiary burdens shift back and forth under [the *McDonnell Douglas*] framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citation, internal quotation marks, and alterations omitted).

Accordingly, a plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue either "(1) that the employer's proffered reason

No. 12-20578

is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Alvarado*, 492 F.3d at 611 (citation omitted); *see also Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996) (citations omitted).

## IV.

Caldwell has failed to establish a *prima facie* case on her demotion claim because she has failed to present evidence that her job reclassification was a demotion. To prove a *prima facie* case of discrimination based on demotion, Caldwell must prove that she: (1) suffered a demotion; (2) she was qualified for the position she occupied; (3) she was a member of a protected class at the time of the demotion; and (4) she was replaced by a person outside of that protected class. *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000) (citations omitted). While Caldwell's Academic Affairs Administrator position was bifurcated into two separate positions, she received one of those positions, and she maintained the same salary and benefits. She also received *additional* job responsibilities, including duties related to tuition, fees, and budgetary and financial matters that other employees previously handled. Moreover, Caldwell actually received a higher salary than Capper, the white female who was appointed to the second position.

Further, even if Caldwell has demonstrated that the reclassification was a demotion, summary judgment is proper nevertheless because the University has articulated a legitimate reason for it, *i.e.*, business necessity and convenience. Caldwell's supervisor, Ness, reassigned Caldwell because his department needed only one person managing the accounts and academic fees, and he needed Caldwell's experience and skill set to refocus that area of his office. Caldwell has failed to rebut that explanation or to demonstrate some other evidence of discriminatory motive. Moreover, it is not our place to second-

guess an employer's business decisions such at this one. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir. 1993) (citation omitted). Accordingly, summary judgment was appropriate on Caldwell's claim that she was demoted based on her race.

Caldwell also has failed to present evidence raising a fact issue on her failure-to-promote claim.[2] A plaintiff alleging that an employer failed to promote her for a discriminatory purpose must prove that: (1) she is a member of the protected class; (2) she sought a position for which she was qualified; (3) she was rejected for the position; and (4) after she was rejected, the employer continued to seek applicants with the plaintiff's qualifications. *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004). Here again, Caldwell must establish a *prima facie* case of discrimination, and the University then must articulate a legitimate, nondiscriminatory reason for its actions. *See Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). An employer's choosing the best-qualified candidate "constitutes a legitimate, non-discriminatory justification for its failure to promote [an employee]." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881-82 (5th Cir. 2003) (citation omitted). If the defendant meets this burden, then the plaintiff must offer sufficient evidence that the defendant's reason is not true, but is instead a pretext for discrimination. *See Price*, 283 F.3d at 720.

Caldwell argues that she was clearly more qualified than Commissariat, who was selected for the College of Pharmacy Business Administrator position. To show that she was clearly more qualified and to raise a fact question as to whether discrimination was a factor in the University's hiring decision, Caldwell "must present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate

---

[2] On appeal, Caldwell challenges only her non-selection for the position of College Business Administrator, School of Pharmacy.

selected over the plaintiff for the job in question.'" *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (citation omitted). "Unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination." *Id.* (alterations, citations, and internal quotation marks omitted).

While Caldwell points to her twenty years of service at the University, the University determined that her experience was less relevant than Commissariat's eighteen years of service, including his two years working in the College of Pharmacy prior to his selection. Further, Caldwell offered no evidence of discriminatory intent and failed to show either that the University's proffered reason for selecting Commissariat was unworthy of credence or that some other evidence indicated discrimination was also a motivating factor. Accordingly, the district court properly granted summary judgment on Caldwell's failure-to-promote claim.

Finally, Caldwell presented no competent summary judgment evidence of the essential elements of a proper disparate impact claim. To establish a disparate impact claim, a plaintiff must show a facially neutral employment practice that disproportionately affects one racial group and that this disparity cannot be justified by business necessity. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(I). Disparate impact claims do not require proof of discriminatory intent. *Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir. 2000). Rather, disparate impact claims "focus on facially neutral employment practices that create such statistical disparities disadvantaging members of a protected group that they are functionally equivalent to intentional discrimination." *Id.* (citation and internal quotation marks omitted). Accordingly, a *prima facie* case of discrimination by disparate impact requires that Caldwell: (1) identify the challenged employment practice or policy, and pinpoint the University's use of it; (2) demonstrate a disparate

impact on a protected group under Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *See Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999) (citations omitted).

The district court concluded that Caldwell failed to identify a facially neutral employment practice that disproportionately impacts black employees at the University, or to proffer any statistical evidence demonstrating that such practice has resulted in discrimination. Caldwell now alleges (apparently for the first time on appeal) that the University engages in a routine practice of failing to follow its own policies concerning reclassification of job positions, and that this practice impacts black women more harshly than others. To support this contention, Caldwell points to the "facts" that no black women at the University earn more than $120,000 per year, supervise white males, or hold "Mid-Level Management" positions. While the University disputes these allegations, even if they are true, Caldwell presents no evidence or analysis to demonstrate how the University's failure to follow its own job reclassification procedures has *caused* this alleged disparate impact on black female employees. *See* 42 U.S.C. § 2000e–2(k)(1)(A)(i) (requiring proof of "a particular employment practice that *causes a disparate impact on the basis of race*" (emphasis added)); *see also Gonzales*, 176 F.3d at 839 n.26. As Caldwell has provided no such evidence or even attempted to explain this causal link, the district court properly granted summary judgment on her disparate impact claim.[3]

## V.

For the foregoing reasons, the district court's grant of Appellees' motion to dismiss and motion for summary judgment is AFFIRMED.

---

[3] Because we conclude that Caldwell failed to proffer sufficient summary judgment evidence on her disparate impact claim, we do not address Appellee's contention that she failed to exhaust administrative remedies on this claim.