# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50650

United States Court of Appeals
Fifth Circuit

**FILED**
July 9, 2019

Lyle W. Cayce
Clerk

MIDCAP MEDIA FINANCE, L.L.C.,

Plaintiff-Appellee Cross-Appellant,

v.

PATHWAY DATA, INCORPORATED, doing business as Consumer Direct,

Defendant-Appellant Cross-Appellee.

Appeals from the United States District Court
for the Western District of Texas

Before CLEMENT, DUNCAN, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

This appeal involves a contract dispute that pits MidCap Media Finance, L.L.C., against Pathway Data, Inc., and Pathway's CEO, David Coulter. But we cannot reach the merits because the parties have failed to establish diversity of citizenship. We remand to allow the district court to consider additional evidence regarding jurisdiction.

I.

MidCap agreed to loan Pathway up to $1.5 million for online advertising under the Media Financing, Security and Assignment Agreement (the "Agreement"). Coulter executed a Guaranty of Repayment (the "Guaranty") that personally obligated him to pay MidCap damages in certain

No. 18-50650

circumstances.   When Pathway stopped making the required periodic payments and refused to repay the outstanding amount—despite receiving a notice to cure and a default notice—MidCap sued Pathway and Coulter. Pathway asserted counterclaims and defenses.

After a bench trial, the trial court concluded Pathway breached the Agreement and awarded damages to MidCap.  The trial court, however, found Coulter was not personally liable for those damages under the Guaranty. Pathway appealed the trial court's determination that MidCap did not materially breach the Agreement.  MidCap cross-appealed, contending the trial court erred in concluding Coulter was not personally liable.

## II.

In their opening appellate briefs, the parties agreed the district court had diversity jurisdiction under 28 U.S.C. § 1332.  And they said we have jurisdiction under 28 U.S.C. § 1291.  Notwithstanding the parties' agreement, we have an independent obligation to assess our own jurisdiction before exercising the judicial power of the United States.  *See, e.g.*, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

When we did so at the outset of this case, we could not find proper allegations or evidence of the parties' citizenship.  So we asked for and received supplemental briefs on the issue.  We are now convinced the evidence does not exist in this record.

## A.

Because federal courts have limited jurisdiction, parties must make "clear, distinct, and precise affirmative jurisdictional allegations" in their pleadings. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988).  To properly allege diversity jurisdiction under § 1332, the parties need to allege "complete diversity." *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam).  That means "all persons on one side of the

2

controversy [must] be citizens of different states than all persons on the other side." *Ibid.* (quotation omitted).

The difference between *citizenship* and *residency* is a frequent source of confusion. For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). Nevertheless, "[c]itizenship and residence, as often declared by this court, are not synonymous terms." *Robertson v. Cease*, 97 U.S. 646, 648 (1878). Citizenship requires not only "[r]esidence in fact" but also "the purpose to make the place of residence one's home." *Texas v. Florida*, 306 U.S. 398, 424 (1939). Therefore, an allegation of residency alone "does not satisfy the requirement of an allegation of citizenship." *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984) (per curiam).

This distinction is not empty formalism. Take for example the Supreme Court's decision in *Robertson v. Cease*. Robertson was a citizen of Texas. But the complaint relied on Cease's *residency* instead of his citizenship:

> [T]here is no allegation as to the citizenship of Cease. The averment as to him is, that he resides in the county of Mason and State of Illinois. It is, however, claimed by counsel to be apparent, or to be fairly inferred from certain documents or papers copied into the transcript, that Cease was, at the commencement of the action, a citizen of Illinois.

97 U.S. at 647 (quotation omitted). One of the documents was Cease's deposition in which he described his "residence" as "Mason County, Illinois." *Ibid.* The Supreme Court held that was insufficient to prove citizenship, reversed a final judgment, and ordered a new trial. *Id.* at 651.

The rules regarding non-natural persons are equally unforgiving. A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Accordingly, "allegations regarding the citizenship of a corporation must set out the principal place of business of the

corporation as well as the state of its incorporation." *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985). In contrast, "the citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). So, to establish diversity jurisdiction, a party "must specifically allege the citizenship of every member of every LLC." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017).

The parties in this case failed to properly allege diversity of citizenship. First, they alleged only that Coulter was a California *resident*, not that he was a California *citizen*. *See Robertson*, 97 U.S. at 647–48; *Strain*, 742 F.2d at 889; *Stine*, 213 F.2d at 448. Second, because MidCap is an LLC, the pleadings needed to identify MidCap's members and allege their citizenship. *See Harvey*, 542 F.3d at 1080. The parties, however, alleged only that MidCap was "organized and existing under the laws of the State of Texas and had its principal place of business" in Texas. They did at least properly allege Pathway's place of incorporation (Nevada) and principal place of business (California). But establishing the citizenship of one party is insufficient to demonstrate complete diversity under § 1332. *See McLaughlin*, 376 F.3d at 353.

## B.

The parties cannot fix that problem here. True, we can allow parties to amend defective jurisdictional allegations on appeal under 28 U.S.C. § 1653. *See Molett v. Penrod Drilling Co.*, 872 F.2d 1221, 1228 (5th Cir. 1989) (per curiam) (collecting cases). But § 1653 "addresses only incorrect statements about jurisdiction that actually exists"; it doesn't provide a mechanism for parties to remedy "defects in the jurisdictional facts themselves." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989). In other words, § 1653 allows us to "overlook [a party's] failure to plead diversity *if* [a party] can

No. 18-50650

identify allegations and evidence in the record demonstrating diversity." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (emphasis added). If, on the other hand, "there is *no* evidence of diversity on the record, we cannot find diversity jurisdiction, and we must dismiss the action for lack of jurisdiction." *Id.* at 920 (emphasis added).

What should we do if there is *some* evidence that jurisdiction exists, but it's not conclusive? It depends.[*] "Where . . . jurisdiction is not clear from the record, but there is some reason to believe that jurisdiction exists, the Court may remand the case to the district court for amendment of the allegations and for the record to be supplemented." *Molett*, 872 F.2d at 1228. Alternatively, we have taken judicial notice of jurisdictional facts "not subject to reasonable dispute" from certain sources such as public filings with state agencies. *See Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015) (quoting FED. R. EVID. 201(b)).

Here we must remand. After we called attention to this issue in our supplemental briefing order, MidCap insisted that Coulter is a *citizen* of California. But underscoring the general confusion over what that term means, MidCap cites only:

- The original complaint, which alleges Coulter "*resides* and works in Riverside County, California";

- Pathway's answer and amended answer, which said Coulter "*resided* in Riverside County, California and worked in Orange County, California";

- Coulter's testimony at trial, which said "I *live* in California";

---

[*] Of course, how much evidence is required also depends on the stage of litigation. Citizenship issues, like every "factual issue necessary to support subject matter jurisdiction[,] 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

- Letters mailed to Coulter's business office in California—which say nothing about where he *resides*, much less where he's domiciled; and

- Pathway's admission that Coulter "may be served at his principal place of business" in California—which again, says nothing about where he *resides* much less where he's domiciled.

Emphases added.

We need not decide whether the parties can cure the Coulter allegations on appeal because we hold the proof of MidCap's citizenship fails.  MidCap is an LLC, so we look for the citizenship of its members.  It has two.  The first is Jeff Black who, we're told, is a citizen of Texas.  But the only record evidence MidCap cites to prove that jurisdictional fact is an email signature block that lists Jeff Black's position at a different LLC and a Texas address for that LLC.  That's insufficient.

MidCap's second member is MidCap Media LLC ("Media").  MidCap cites a mixture of record evidence and new exhibits containing public tax filings to trace the membership interests of Media through a variety of *still more* LLCs to the ultimate interest owners: Jeff Black and Joe Black.  And MidCap asks us to consider new exhibits attached to its supplemental briefing that include declarations claiming Jeff and Joe are Texas and Georgia citizens respectively.

We cannot.  True, we can take judicial notice of MidCap's members based on the public tax filings in its exhibits.  *See* FED. R. EVID. 201; *Swindol*, 805 F.3d at 519.  But we agree with Pathway that it would be improper for us to consider the Blacks' declarations.  Since at least 1878, the Supreme Court has prohibited us from receiving jurisdictional evidence on appeal.  *See Robertson*, 97 U.S. at 648 (refusing to consider documents that "clearly do not constitute any legitimate part of the record" below).  Rule 201 does not change that prohibition.  *See Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 n.4 (5th Cir. 2012) ("[A] party may not avoid the rule against supplementing the record with a document not before the district court by requesting that the appellate

court take judicial notice of the document."). Nor does § 1653; that provision authorizes us to correct "formal mistakes," not "to receive new evidence." *Nadler v. Am. Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985) (quotation omitted); *accord Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 323 (5th Cir. 2009) (explaining that, if the Court granted a motion to amend the pleadings under § 1653, it would still need to remand so jurisdictional facts could be established before the district court); *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805–06 (5th Cir. 1991) (denying motion to amend under § 1653 where the defect was not "merely one of form, rather than one of substance," because the record below was "insufficient to factually establish diversity jurisdiction"); *Strain*, 742 F.2d at 890 & n.2 (remanding a case back to the district court to determine "whether jurisdictional grounds exist" because "we do not sit to receive new evidence" and must "conform[] to our role as an appellate tribunal"); *cf. Schwarz v. Folloder*, 767 F.2d 125, 128 n.2 (5th Cir. 1985) (rejecting parties' attempt to attach a new affidavit as an appendix to their brief as an improper "attempt to introduce new evidence on appeal").

MidCap says it can establish jurisdiction under *Warren v. Bank of America*, 717 F. App'x 474 (5th Cir. 2018) (per curiam), and *Burdett v. Remington Arms Co.*, 854 F.3d 733 (5th Cir. 2017), because the Blacks' declarations are undisputed. But the Blacks' declarations *are* disputed. In fact, Pathway filed a motion to strike them because it "has never heard of Joe Black and has not had an opportunity to investigate, take discovery[,] or otherwise be in a position to dispute new purported facts presented for the first time on appeal." We therefore need not consider whether *Burdett* or *Warren* purported to change our decades-long interpretation that § 1653 does not allow us to receive new evidence of jurisdictional facts.

We cannot use § 1653 to supplement the record with the Blacks' declarations regarding their citizenship. Because our jurisdiction remains

No. 18-50650

unclear, "but there is some reason to believe that jurisdiction exists," we "remand the case to the district court for amendment of the allegations and for the record to be supplemented." *Molett*, 872 F.2d at 1228.

\* \* \*

The state courts have general jurisdiction. Federal ones do not. And the States' courthouse doors are open to contract disputes like this one regardless of the parties' citizenship. Federal ones are not. Respect for the state system and the strictly circumscribed nature of federal jurisdiction requires our unflagging attention to these limits. We expect the same unflagging attention from litigants who invoke our jurisdiction. We REMAND to the district court to determine whether it has diversity jurisdiction, and we DENY the pending motion to strike as MOOT.