# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 17, 2022

Lyle W. Cayce
Clerk

No. 20-30072

_____

Cleartrac, L.L.C.; Russell Kent Moore,

*Plaintiffs—Appellants*,

*versus*

Lanrick Contractors, L.L.C.; Lanrick Real Estate, L.L.C.; Southeast Dirt, L.L.C.; Hudson Holdings, L.L.C.; Hudson Holdings Equipment, L.L.C.; Thomas P. McKellar,

*Defendants—Appellees*,

consolidated with

_____

No. 20-30076

_____

Cleartrac, L.L.C.; Russell Kent Moore,

*Plaintiffs—Appellees*,

*versus*

Lanrick Contractors, L.L.C.; Lanrick Real Estate, L.L.C.; Southeast Dirt, L.L.C.; Hudson Holdings, L.L.C.; Hudson Holdings Equipment, L.L.C.; Thomas P. McKellar,

*Defendants—Appellants*.

No. 20-30072
c/w No. 20-30076

Appeals from the United States District Court
for the Eastern District of Louisiana,
USDC No. 2:19-CV-12137

Before Dennis, Higginson, and Willett, *Circuit Judges*.
James L. Dennis, *Circuit Judge*:

These consolidated appeals involve a dispute over the enforceability of a Texas state court judgment after it had been made executory by a Louisiana state court and the judgment creditors then sought to make it executory in the United States District Court for the Eastern District of Louisiana. That federal court dismissed the case on res judicata grounds, but we conclude instead that the district court lacked subject-matter jurisdiction over the case because Plaintiffs failed to satisfy 28 U.S.C. § 1332(a)'s amount-in-controversy requirement for diversity of citizenship jurisdiction. Accordingly, we VACATE and REMAND with instructions for the district court to dismiss the case for lack of jurisdiction.

Section 1332(a) requires that "the matter in controversy exceed[] the sum or value of $75,000, exclusive of interest and costs." While the statute as a general matter excludes interest and costs, under recognized exceptions, § 1332(a) does not prevent a plaintiff from using costs or interest that his principal claim includes at the time it arose, such as those accrued in a prior case. Here, however, Plaintiffs rely crucially on interest that had not yet accrued at the time their claim to enforce their prior judgment arose. Because that interest is excluded by § 1332(a), Plaintiffs failed to establish subject-matter jurisdiction over the present case.

No. 20-30072
c/w No. 20-30076

# I.

On August 26, 2010, a Texas state court rendered a default judgment (the "Texas Judgment") in favor of Cleartrac, LLC ("Cleartrac") and against Lanrick Contractors Corp. ("Lanrick Contractors").[1] The Texas Judgment provided the following awards to Cleartrac:

1. $51,519.47 in principal;
2. Pre-judgment interest at a per diem rate of $7.06 after February 22, 2010, when the original complaint was filed through the date of judgment;
3. $3,000.00 for the filing and prosecution to trial of this case in the 272nd Judicial District Court for the County of Brazos, State of Texas;
4. $2,500.00 for post-judgment collection efforts;
5. $500.00 in court costs in the 272nd Judicial District Court for the County of Brazos, State of Texas;
6. Post-judgment interest at a rate of 5.00% per annum from the date of judgment until the judgment is paid in full.

On November 16, 2011, following entry of the Texas Judgment, Cleartrac filed a "Petition to Make Judgment Executory" against Lanrick Contractors in Louisiana state court, and, on November 21, 2011, that state court ordered that the Texas Judgment be made executory and made the judgment of the Louisiana court. On June 25, 2014, Cleartrac was dissolved.[2]

---

[1] Lanrick Contractors, LLC is the successor to Lanrick Contractors Corp. All further references to "Lanrick Contractors" are to Lanrick Contractors, LLC.

[2] Plaintiffs maintain that, under Texas Business Organization Code § 11.356(c), an entity like Cleartrac may survive for three years after dissolution for a limited purpose until judgments rendered in its favor have been fully executed. However, the parties contest that assertion. In fact, as explained below, the Louisiana state court ruled against Cleartrac on the issue, and when Cleartrac filed its complaint in the Louisiana federal court in this case, it was joined by its sole former member Russell Moore as a precaution. As we find the district court lacked subject-matter jurisdiction in this case, we take no position on the

No. 20-30072
c/w No. 20-30076

Several years later, on August 3, 2017, Cleartrac filed a "Petition to Enforce Judgment" in Louisiana state court, seeking to enforce the Texas Judgment against Lanrick Contractors. On July 9, 2018, Cleartrac amended its state court petition, adding as defendants Lanrick Real Estate, LLC; Southeast Dirt, LLC; Hudson Holdings, LLC; Hudson Holdings Equipment, LLC; Thomas P. McKellar; and Lisa C. McKellar. On August 5, 2019, the Louisiana state district court granted defendants' exception of no right of action, holding that, under Texas law, Cleartrac had no right to enforce the Texas Judgment. Two weeks later, on August 19, 2019, the Louisiana state court entered a judgment dismissing Cleartrac's action. Cleartrac was initially granted a suspensive appeal to the Louisiana court of appeal on December 9, 2019, which delayed execution of the judgment pending appeal. As of August 6, 2020, Cleartrac no longer had a suspensive appeal pending, but only a devolutive appeal. Ultimately, on March 4, 2022, the Louisiana First Circuit Court of Appeal reversed the judgment of the Louisiana state district court due to lack of evidence of Cleatrac's dissolution. *Cleartrac, LLC v. Lanrick Contractors, LLC*, 2021-0413 (La. App. 1 Cir. 3/4/22), 2022 WL 630897.[3]

In the interval between the Louisiana state court's grant of the exception of no right of action and its entry of judgment dismissing the case, Cleartrac and its sole member, Russell Kent Moore, (collectively, "Plaintiffs") filed a complaint in the United States District Court for the Eastern District of Louisiana ("EDLA") seeking to invoke the court's diversity jurisdiction. Plaintiffs again sought to enforce the Texas Judgment

---

ability of either Plaintiff to bring this action but merely note the issue to explain the posture of this case.

[3] An initial appeal was dismissed for lack of appellate jurisdiction. *Cleartrac, LLC v. Lanrick Contractors, LLC*, 2020-0175 (La. App. 1 Cir. 11/6/20), 2020 WL 6536929.

and make it executory. They named as defendants Lanrick Contractors; Lanrick Real Estate, LLC; Southeast Dirt, LLC; Hudson Holdings, LLC; Hudson Holdings Equipment, LLC; and Thomas P. McKellar (collectively, "Defendants").

Defendants filed two motions to dismiss. First, Defendants argued that the EDLA lacked subject-matter jurisdiction under 28 U.S.C. § 1332(a). Defendants did not challenge that there was complete diversity between the parties but instead contended that the diversity statute's amount-in-controversy requirement was not met. Specifically, Defendants argued that 28 U.S.C. § 1332(a) bars the inclusion of post-judgment interest in computing the jurisdictional amount and that, without post-judgment interest, the dispute involves less than $75,000. The EDLA, they argued, therefore lacked jurisdiction. That district court rejected Defendants' argument and denied their motion. Second, Defendants asserted in a separate motion that the doctrine of res judicata precluded the federal action because the Louisiana state district court in its August 19, 2019, judgment already decided Plaintiffs had no right to bring this action. Agreeing with Defendants, the EDLA granted their res judicata motion under Federal Rule of Civil Procedure 12(b)(6) and dismissed the case.

Defendants timely appealed the district court's ruling on subject-matter jurisdiction, while Plaintiffs timely appealed the court's order dismissing on the basis of res judicata.

## II.

"Federal courts are courts of limited jurisdiction." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "The burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Id.* at 919. This court, moreover, has "an independent obligation" to assure itself of its

jurisdiction. *MidCap Media Finance, L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019).

Plaintiffs sought to invoke the district court's diversity jurisdiction under 28 U.S.C. § 1332. Relevant here, § 1332(a) permits the exercise of federal jurisdiction only when (1) the dispute is between citizens of different states and (2) the amount in controversy "exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332(a). Because we find that Plaintiffs have not met the amount-in-controversy requirement, we need not address whether there is diversity of citizenship. As to the amount in controversy, it "should be determined at the time of filing" of the complaint. *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003).

Plaintiffs argue that the amount in controversy is $85,180.97, consisting of the following awards from the Texas Judgment: $51,519.47 in principal; $1,313.16 in pre-judgment interest; $3,000 in attorneys' fees for filing and prosecuting the case; $2,500 in post-judgment collection efforts; $500 in court costs; and 5.00% interest per annum from the date of the Judgment until paid in full. Because the $51,519.47 principal by itself is clearly insufficient, the question, then, is whether the other awards in the Texas Judgment must be included in calculating the amount in controversy or are excluded as interest or costs.

We first address costs. By its language, § 1332(a) plainly excludes "costs" from the amount in controversy. However, as leading commentators have noted, courts have considered costs in computing the amount in controversy "when the subject matter of the controversy happens to be or include the costs awarded in an earlier lawsuit." 14AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3712 & n.3 (4th ed.), Westlaw (database updated Aug. 2022) (citing *Spann v. Compania Mexicana Radiodifusora Fronteriza, S. A.*, 131 F.2d

609 (5th Cir. 1942); *Richard C. Young & Co. v. Leventhal*, 389 F.3d 1 (1st Cir. 2004)). One of the cases these commentators cite in support is our early case, *Spann v. Compania Mexicana Radiodifusora Fronteriza, S. A.*, 131 F.2d 609 (5th Cir. 1942). In that case, Spann sued for $50,000 in a Mexican court and lost both his lawsuit and appeals. *Id.* at 610. Under Mexican law, as the losing party, Spann was assessed the costs of the litigation; specifically, he was ordered by Mexican courts to pay the defendant 12% of the $50,000 sum requested—that is, $6,000—consisting of 8% to reimburse attorney fees and 4% to reimburse appeal costs. *Id.* The prevailing party in the Mexican litigation sued Spann in U.S. federal court to enforce the Mexican judgment. Attempting to resist the federal court's jurisdiction, Spann "insist[ed] that the suit was not for a sum or value in excess of $3,000.00"—the jurisdictional amount then in effect under § 1332—and thus the U.S. federal "court was without jurisdiction." *Id.* The district court rejected Spann's arguments, and this court affirmed, explaining that in accordance with Mexican law, judgment for costs had been entered against Spann in favor of the adverse party in the sum of $6,000, or its equivalent in National currency; that the judgment had been affirmed by the Mexican supreme court; and that no part of it had been paid. *See id.* at 610-11. Thus, the adverse party was entitled to rely on the $6,000 judgment for costs as costs awarded in the prior Mexican case before the litigation in the U.S. courts began, and, included as part of the amount in controversy, that amount clearly exceeded the jurisdictional amount of $3,000 at that time. *See id.*

In the present case, the subject matter of the controversy includes costs awarded in an earlier lawsuit: the $500 in court costs and the $2,500 in post-judgment collection efforts awarded in the Texas Judgment. Guided by the commentators and *Spann*, these costs are thus included in determining the amount in controversy. *Spann* applied the same reasoning to attorneys' fees awarded in a prior judgment as well. *See id.* Accordingly, the $3,000 in

attorneys' fees for filing and prosecuting the case awarded in the Texas Judgment are also included. But these items do not add up to enough to exceed $75,000.

So, we must turn to the subject of interest, which is critical. The purpose of § 1332(a)'s exclusion of interest is to prevent the plaintiff from delaying suit until the substantive claim, with the accrued interest, exceeds the jurisdictional amount. *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968); *State Farm Mut. Auto. Ins. Co. v. Narvaez*, 149 F.3d 1269, 1271 (10th Cir. 1998); WRIGHT & MILLER, *supra*, § 3712. The leading Supreme Court decision explaining what interest is excludable under § 1332(a) is *Brown v. Webster*, 156 U.S. 328 (1895). There, the plaintiff sued his vendor in warranty for damages for being evicted from land he had purchased from the defendant for $1,200. *Id.* at 328. Under the applicable state law, the damages in such an action were the return of the purchase price with interest, which plaintiff alleged to total $6,342.40. *Id.* at 329. The defendant objected to the court's jurisdiction, contending that the then-prevailing $2,000 jurisdictional amount was not met because, when the interest was excluded from the amount in controversy, the dispute concerned only the $1,200 return of price. The Court disagreed, stating that the defendant's argument "overlooks the elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand." *Id.* The recovery sought in that case was "not the price and interest thereon, but the sum of the damage resulting from eviction. All such damage was therefore the principal demand in controversy." *Id.* at 329-30. The Court, then, drew a distinction "between a principal and an accessory demand. The sum of the principal demand determines the question of jurisdiction. The accessory or the interest demand cannot be computed for jurisdictional purposes." *Id.* at 330. Because in *Brown* "the entire damage claimed . . . was predicated on a distinct

cause of action[]—eviction from the property bought"—the interest could be included. *Id.* In short, the interest "was an essential ingredient in the one principal claim" and could not be "segregated therefrom, and be considered as a mere accessory thereto." *Id.* Also, although the Court did not explicitly so state, the interest sued for was not post-judgment interest but interest that accrued within the plaintiff's state-law cause of action for eviction.

Our Court has summarized the rule in *Brown* as follows: "Interest is only considered for jurisdictional purposes where it is a basis for the suit itself." *Danial v. Daniels*, 162 F. App'x 288, 290 (5th Cir. 2006) (citing *Brown*, 156 U.S. 328; *Greene County v. Kortrecht*, 81 F. 241 (5th Cir. 1897)). We have applied the holding in *Brown* only once in a published decision. In *Greene County v. Kortrecht*, 81 F. 241, 241 (5th Cir. 1897), the plaintiff sought to collect on negotiable bonds and their coupons, seeking the principal as well as interest that accrued after the date of their maturity. The court drew a distinction between coupons, which "represent interest on the bond accruing and made payable at stated times before the maturity of the bond," and interest on the bonds and coupons "accruing after maturity." *Id.* A coupon, the court noted, "is an independent contract stipulating for the payment of the installment of interest at the time named in each, respectively, and, after its maturity, bears interest, will support an action, and is subject to the statute of limitations, as a separable contract." *Id.* Thus, the Supreme Court has held that a claim on a coupon is included in the amount in controversy as a "principal and primary" claim, "in no just sense accessory to any other demand." *Edwards v. Bates Cnty.*, 163 U.S. 269, 272 (1896), *cited in Kortrecht*, 81 F. at 241. On the other hand, the court in *Kortrecht* reasoned, "[t]he interest on the bonds accruing after maturity, and the interest on each coupon accruing after its maturity, has an accessory relation to the principal of the bond and of each coupon" and thus "is excluded from the calculation of the

amount declared on, in determining the jurisdiction of the circuit court." 81 F. at 241.

Making a similar distinction to the one in *Kortrecht*, the First Circuit has explained that, under *Brown*, interest is included in calculating the jurisdictional amount when "the principal claim itself, at the time it arose, was made up in part of interest," while interest is excluded when it "aris[es] solely by virtue of a delay in payment." *Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1962).[4] Neither we nor our sister circuits, however, have addressed the precise question presented in this case. There are two components of interest in the unpaid Texas Judgment which we must determine whether to include in calculating the jurisdictional amount. First, there is the "pre-judgment interest." That is the interest that accrued from the filing of the initial Texas complaint until the Texas Judgment was rendered. That interest is no longer accruing. Second, there is the "post-judgment interest," which is the interest accruing from the time the Texas Judgment was entered until paid. That interest is continuously accruing.

Several district courts have explored the issues presented in this case. The majority of district courts appear to distinguish between pre-judgment interest and post-judgment interest, including the former in the amount in controversy but excluding the latter. *See, e.g.*, *Reynolds v. Reynolds*, 65 F. Supp. 916, 918-19 (W.D. Ark. 1946) (excluding post-judgment interest); *Colonia Ins. Co. v. Williams*, No. 1:95CV288–S–D, 1995 WL 1945464, at *2 (N.D. Miss. Oct. 11, 1995) (same); *Phoenix Scotts-Sports v. Kadish*, 321 F. Supp. 556, 557 (D. Alaska 1971) (including pre-judgment interest but

---

[4] Indeed, "interest uniformly is excluded under the rule of *Brown v. Webster*, if it . . . arises solely by virtue of a delay in payment of an obligation." Wright & Miller, *supra*, § 3712; *see, e.g.*, *Howard v. Off. Of Special Deputy Receiver*, No. 22-10240, 2022 WL 2255708, at *1 (5th Cir. June 23, 2022); *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988); *Whisenant v. Sheridan Prod. Co.*, 627 F. App'x 706, 709 (10th Cir. 2015); *cf. Brainin*, 396 F.2d at 155.

excluding post-judgment interest); *Richie v. Richie*, 186 F. Supp. 592, 593 (E.D.N.Y. 1960) (same).  However, some district courts have taken a broader view and included post-judgment interest in the amount in controversy.  *See, e.g.*, *Snider v. State Farm Mutual Automobile Insurance Co.*, 360 F. Supp. 929, 931 (S.D.W. Va. 1973); *Gambino v. Am Guarantee & Liab, Ins. Co.*, No. 3:09–CV–00304(CFD), 2009 WL 3158151, at *1 n.1 (D. Conn. Sept. 28, 2009).

We conclude that the pre-judgment interest that accrued prior to the Texas Judgment is included in determining the amount in controversy in an action to enforce that Judgment.  As pre-judgment interest has completely accrued during the prior case, this sum can be precisely calculated and does not vary depending on the other awards and when the plaintiff files suit.  Because pre-judgment interest is an accrued component of the judgment sued upon at the time the claim to enforce the judgment arose, and because pre-judgment interest's value does not depend on the passage of time after entry of the state court judgment, pre-judgment interest can be fairly said to constitute an "essential ingredient in the . . . principal claim."  *See Brown*, 156 U.S. at 330; *Regan*, 309 F.2d at 678.

As to the post-judgment interest accruing after entry of the Texas Judgment, however, we conclude that it may not be included in determining the amount in controversy in an action to enforce that Judgment.  Excluding post-judgment interest from the calculation furthers § 1332(a)'s statutory purpose of preventing plaintiffs from delaying in filing suit until sufficient interest has accrued such that they can reach the jurisdictional amount.  *See Brainin*, 396 F.2d at 155; *State Farm*, 149 F.3d at 1271. Permitting otherwise would approve the anomalous situation where a judgment-creditor who seeks to invoke a federal court's diversity jurisdiction but is unable to meet the amount-in-controversy requirement on the day his substantive claim first accrues can simply wait until sufficient time has passed—and sufficient interest has accumulated on his claim—such that he can meet the

jurisdictional amount set forth in § 1332(a).  *See Regan*, 309 F.2d at 678; *Reynolds*, 65 F. Supp. 918; *Kadish*, 321 F. Supp. at 557.

Plaintiffs argue that the post-judgment interest on the Texas Judgment forms part of an "essential ingredient" in the "principal demand" for enforcement of the Texas Judgment under *Brown*.  However, unlike pre-judgment interest, no part of the post-judgment interest has accrued at the time the claim to enforce the judgment arose; rather, post-judgment interest increases thereafter solely due to delay in paying the other awards in the judgment.  In that sense, post-judgment interest is "accessory" to the other awards.  *See Kortrecht*, 81 F. at 241; *Regan*, 309 F.2d at 678; *Reynolds*, 65 F. Supp. at 918; *Colonia Ins. Co.*, 1995 WL 1945464, at *2.

Turning again to the allegations in this case, the $1,313.16 in pre-judgment interest awarded in the Texas Judgment is included in determining the amount in controversy.  However, the 5.00% interest from the date of the Judgment until paid in full is not.  The total amount in controversy thus comes to $58,832.63.  Because the amount in controversy does not exceed the sum or value of $75,000, exclusive of interests and costs, the district court lacked subject-matter jurisdiction under § 1332(a).

### III.

For these reasons, we VACATE the district court's judgment dismissing Plaintiffs' complaint on the basis of res judicata and REMAND with instructions that the district court dismiss this case without prejudice for lack of subject-matter jurisdiction.