# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 14, 2023

Lyle W. Cayce
Clerk

———————

No. 23-30129

———————

GLENN R. STEWART; PARC GARDENS, L.L.C.; MAISON
LAFAYETTE, L.L.C., *doing business as* CAMELIA GARDENS, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

MORTON M. GRUBER; GRUBER & ASSOCIATES ARCHITECTS,
L.L.C.; THOMAS METZGER; METZGER ARCHITECTURE, L.L.C.,

*Defendants—Appellees*,

FREDERICK W. KEENEY; F W KEENEY & ASSOCIATES,

*Third Party Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:20-CV-1479

———————————————————————

Before CLEMENT, HAYNES, and OLDHAM, *Circuit Judges*.

PER CURIAM:[*]

———————————————

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-30129

Plaintiffs[1] appeal from two interrelated district court orders: (1) the exclusion of their expert's reports and testimony, and (2) the grant of Defendants' motion for summary judgment. We AFFIRM.

## I. Background

Plaintiffs hired the Architect Defendants[2] to design an apartment complex. Post-construction, Plaintiffs sued the Architect Defendants in Louisiana state court for professional negligence and breach of contract. Plaintiffs alleged that the architectural design was faulty and causing defects in the apartment building. They therefore sought damages to offset the alleged cost of repairs and to mitigate the alleged deficiencies. The Architect Defendants jointly removed the lawsuit to federal court.

In January 2021, the district court issued a scheduling order with an October 2021 deadline for Plaintiffs' expert information and reports and a June 2022 trial date. In February 2021, certain Architect Defendants filed a third-party complaint against the Keeney Defendants,[3] who had provided mechanical and plumbing design for the apartment complex. The Keeney Defendants filed a consent motion to extend pretrial scheduling deadlines, which the district court granted. The district court also issued a new scheduling order with an April 21, 2022 deadline for Plaintiffs' expert information and reports and a December 2022 trial date.

---

[1] "Plaintiffs" refers to Glenn R. Stewart; Parc Gardens, L.L.C.; and Maison Lafayette, L.L.C., doing business as Camelia Gardens, L.L.C.

[2] The "Architect Defendants" refers to Defendants Morton M. Gruber; Gruber & Associates Architects, L.L.C.; Thomas Metzger; and Metzger Architecture, L.L.C.

[3] The "Keeney Defendants" refers to Third-Party Defendants Frederick W. Keeney and F W Keeney & Associates.

No. 23-30129

In February 2022, Plaintiffs produced in response to a discovery request a field report that Dyke Nelson authored. Plaintiffs also indicated in the same discovery responses that they had "not yet retained expert witnesses in this matter."

Plaintiffs did not produce expert information or reports by the court's April 21, 2022 deadline. But on April 26, 2022, Plaintiffs emailed to Defendants what they described as a "preliminary expert report," (the "April 26 Report") noting that "[a]n amended report is currently being prepared." The April 26 Report was effectively a restyling of Nelson's field report that Plaintiffs had previously produced in discovery, with the addition of a summary of Nelson's firm and a list of the firm's relevant projects and previous experience. In the same email, Plaintiffs stated that "while we are in the midst of discussing an extension of expert deadlines, I thought it prudent to circulate this draft." The last line in the email requested that the Architect Defendants "[p]lease advise at your earliest convenience, no later than end of day [April 28, 2022] whether a Motion to Extend Expert Deadlines will be opposed."

On May 4, 2022, Plaintiffs' counsel informed Defendants' counsel via email that "[r]egrettably, after discussions and further review of the schedule, we do not have authority and will not be able to join in a motion to continue any dates or deadlines." Plaintiffs also advised that an amended expert report would be forthcoming.

Then, on May 13, 2022, Plaintiffs sent to Defendants a "supplemental expert report" (the "May 13 Report"). The May 13 Report included for the first time a page about Nelson's qualifications, a list of rates charged by Nelson's firm, and a statement that "[t]he overall condition of the project is below industry standards for a product of this type (Class A Apartments)."

Finally, on June 15, 2022, Plaintiffs sent to Defendants an "amended and supplemental expert report" (the "June 15 Report"). The June 15 Report added a climate-zone map and a reference to the same, an opinion concerning violations of the construction agreement between the parties, and Nelson's C.V.

The Architect Defendants subsequently filed a motion in limine to strike Nelson's expert reports as untimely and to prohibit him from testifying at trial. The Keeney Defendants filed a similar motion. The Architect Defendants also moved for summary judgment, arguing that Plaintiffs would not be able to show the applicable standard of care, or that the Architect Defendants breached such standard, if the district court struck Nelson's reports and testimony.

The district court granted Defendants' motions in limine, striking Nelson's expert reports and prohibiting his testimony. It also granted the Architect Defendants' motion for summary judgment on the basis that, without Nelson's reports, opinions, and testimony, Plaintiffs could not establish the standard of care necessary to prove their case. The court therefore dismissed Plaintiffs' claims against the Architect Defendants with prejudice and dismissed the Architect Defendants' third-party claims against the Keeney Defendants without prejudice. After the district court denied Plaintiffs' motion for reconsideration, Plaintiffs timely appealed.

## II. Jurisdiction

Before reaching the merits, we must address a jurisdictional issue. Defendants' jointly removed the case based on diversity jurisdiction under 28 U.S.C. § 1332(a), but in their notice of removal, they alleged the residence, rather than the citizenship, of members of Plaintiff Maison

Lafayette, L.L.C.[4]  Because allegations of residency alone do not satisfy the citizenship requirement for purposes of complete diversity, *see MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313–14 (5th Cir. 2019), we requested a joint response from the parties addressing the diversity jurisdiction of federal courts pursuant to 28 U.S.C. § 1653,  *see id.* at 314 (explaining that § 1653 allows us to overlook jurisdictional-pleading deficiencies if a party "can identify allegations and evidence in the record demonstrating diversity" (quotation omitted)); *see also Seguin v. Remington Arms Co., L.L.C.*, 22 F.4th 492, 494–96 (5th Cir. 2022) (requesting a joint letter from the parties to address a pleading defect regarding the citizenship of an LLC).

In response, the parties submitted a joint letter clarifying that Marion and Chuck Stewart are and at all relevant times have been citizens of Washington State.  The parties also pointed to evidence in the record, namely, the relevant entities' filings with the Louisiana Secretary of State, to support their correction regarding Marion and Chuck Stewart's citizenship. Finally, the parties requested that we treat their joint letter as an amendment to the pleadings of citizenship in the joint notice of removal.

28 U.S.C. § 1653 clearly states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial *or* appellate courts." (emphasis added).  Pursuant to that statute, we see no need to take additional time in and from the district court on this issue, so we elect to treat the parties' joint letter as an amendment to the pleadings of citizenship after

---

[4] More precisely, Defendants alleged the residence of Marion Stewart and Chuck Stewart, both of whom are members of Parc Lafayette, L.L.C. and Lake Charles Gardens, L.L.C.  Both entities, in turn, are members of Plaintiff Maison Lafayette, L.L.C. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (explaining that "citizenship of a LLC is determined by the citizenship of all of its members").

reviewing the parties' proposed corrections and record cites that support such corrections. *See Burdett v. Remington Arms Co., L.L.C.*, 854 F.3d 733, 734 n.1 (5th Cir. 2017) (treating as an amendment to the pleadings a joint letter that corrected a jurisdictional pleading deficiency regarding the citizenship of an LLC's members); *Nadler v. Am. Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985) (granting motion to amend on appeal allegations of an LLC member's residence rather than citizenship after concluding that "the record shows a significant probability of complete diversity"). Based on the amendment to the pleadings regarding the citizenship of the parties, we are satisfied that the district court had jurisdiction under 28 U.S.C. § 1332(a).

We thus have jurisdiction to review the district court's grant of summary judgment, including its prior order excluding Nelson's reports and testimony, under 28 U.S.C. § 1291. *See Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1102 (5th Cir. 1983) ("[A] party may obtain review of prejudicial adverse interlocutory rulings upon [the party's] appeal from adverse final judgment, at which time the interlocutory rulings . . . are regarded as merged into the final judgment terminating the action.").

## III. Standard of Review

Because this case involves the exclusion of expert reports and testimony for the purposes of a summary judgment determination, "the applicable standards of review overlap somewhat." *Munoz v. Orr*, 200 F.3d 291, 300 (5th Cir. 2000). First, we review the exclusion of expert reports and testimony "only for an abuse of discretion [that] amounts to manifest error." *Id.* We reverse the district court only in "unusual and exceptional cases." *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 807 (5th Cir. 2018) (alteration adopted) (quotation omitted). After we have reviewed the exclusion of the evidence at issue, we then "review de novo the grant of summary judgment

based on the evidence properly before the district court." *Munoz*, 200 F.3d at 300. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Lincoln v. Scott*, 887 F.3d 190, 195 (5th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).

## IV. Discussion

Plaintiffs raise two issues on appeal: (1) whether the district court abused its discretion by excluding Nelson's reports and testimony, and (2) whether the district court erred in granting summary judgment in favor of Defendants. We address each in turn.

### A. Exclusion of Nelson's reports and testimony

Plaintiffs assert that the district court abused its discretion by excluding Nelson's reports and testimony pursuant to Federal Rule of Civil Procedure 37(c)(1).[5] We disagree.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." It also notes a court's ability to impose other appropriate sanctions in addition to or instead of excluding the witness. FED. R. CIV. P. 37(c)(1).

---

[5] Plaintiffs do not dispute that the April 26 Report was both untimely and incomplete. Additionally, Plaintiffs have forfeited the argument that Nelson's subsequent reports complied with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B) because Plaintiffs have not adequately briefed that argument. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

We review a district court's "discretion to exclude evidence that was not properly designated by considering the following four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (citations omitted).

### 1. First factor: Plaintiffs' explanation

Regarding the first factor—Plaintiffs' explanation—the district court noted that Plaintiffs did not explain their failure to timely designate a complete report.  Plaintiffs do not dispute this, nor do they offer an explanation on appeal.  Accordingly, we hold that the district court properly concluded that the first factor favors exclusion.  *See 1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1289 (5th Cir. 1991) (concluding that exclusion of expert witness "is particularly appropriate" when the party has "failed to provide an adequate explanation for their failure to identify their expert within the designated timetable").

### 2. Second factor: importance of Nelson's reports and testimony

Next, the district court held that the second factor—the importance of Nelson's reports and testimony—"does not weigh in Plaintiffs' favor." The district court acknowledged Plaintiffs' assertion that Nelson's testimony would be critical to Plaintiffs' case and that Nelson would have been Plaintiffs' sole expert witness.  But the district court reasoned that Nelson's alleged importance to Plaintiffs' case "only underscores the importance of plaintiffs' compliance with the court's deadlines."  The district court also stated that "the importance of testimony 'cannot singularly override the enforcement of local rules and scheduling orders.'"

Plaintiffs contend that the district court's reasoning "flipped the second factor upside down."  Plaintiffs rely on *Betzel v. State Farm Lloyds*,

480 F.3d 704, 707–08 (5th Cir. 2007), which criticized two of our earlier decisions for concluding that an untimely-disclosed expert's significance underscores the importance of complying with the relevant deadline. According to Plaintiffs, the importance factor must favor inclusion of the expert when exclusion leaves the proponent without an expert.

We disagree.  Although Nelson is indeed the only expert Plaintiffs offer, and therefore an important witness, the district court's reasoning was not an abuse of discretion.  That is because we have previously employed similar reasoning as the district court when addressing the second *Geiserman* factor.

For example, in *Geiserman*, we assumed arguendo that the expert testimony at issue was significant to the proponent's case and reasoned that the expert's importance provided "so much the more reason to be sure [the expert's] introduction was properly grounded."  893 F.2d at 791.  Although we did not explicitly state which party the importance factor favored, when weighing the four factors together, we reasoned that "[t]he claimed importance of expert testimony underscores the need for [the proponent] to have timely designated his expert witness so that [the opposing party] could prepare for trial."  *Id.* at 792.  We also remarked that "[t]he importance of such proposed testimony cannot singularly override the enforcement of local rules and scheduling orders."  *Id.*  Further, like the present case, exclusion of the expert at issue in *Geiserman* left the proponent without expert testimony and resulted in summary judgment.  *See id.* at 793–94.

Likewise, in *Barrett v. Atlantic Richfield Co.*, we acknowledged the significance of the expert testimony at issue but stated that "the claimed importance of [the proponent's] expert testimony merely underscores the need for [the proponent] to have complied with the court's deadlines or at least informed the trial judge in advance if good faith compliance was not

possible." 95 F.3d 375, 381 (5th Cir. 1996). Ultimately, we held that "the district court did not abuse its discretion in striking the testimony," even though exclusion of the experts at issue left proponents without expert testimony and resulted in summary judgment. *Id.* at 383.

Although Plaintiffs are correct that *Betzel* criticized *Geiserman* and *Barrett* for applying the importance factor in "unexpected ways," and "standing it on its head," Plaintiffs fail to contend with our rule of orderliness. *See Betzel*, 480 F.3d at 707–08. Under the rule of orderliness, "one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as a statutory amendment, or the Supreme Court, or our en banc court." *Jacobs v. Nat'l Drug Intell. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) (emphasis omitted). "Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void." *Id.* To the extent two panel decisions conflict, the earlier decision controls. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 497 (5th Cir. 2016). Because *Geiserman* (1990) and *Barrett* (1996) predate *Betzel* (2007), and we have not found a relevant intervening change in the law, *Betzel*'s criticism of the reasoning in those opinions does not render the district court's reliance on such reasoning an abuse of discretion.

We therefore hold that the district court did not abuse its discretion by concluding that the second factor "does not weigh in Plaintiffs' favor."[6]

### 3. Third factor: potential prejudice to Defendants

---

[6] Plaintiffs paraphrase the district court's analysis as: "*if the witness is so important, then you shouldn't miss deadlines—factor two favors [Defendants].*" While the district court's focus was that the high importance of this expert did not favor the Plaintiffs' position rather than that it helped the Defendants' position, Plaintiffs correctly acknowledge that our precedent supports the Defendants on this element in this situation.

Turning to the third factor—potential prejudice to Defendants—the district court found the existence of "prejudice to [Defendants], who were not provided with a sufficient expert report until far past the deadline provided in the Scheduling Order." According to the district court, disregard for discovery deadlines "disrupts the court's docket and opponent's preparation, and thus, is prejudicial." Acknowledging Plaintiffs' contention that the June 15 Report was fully compliant with Rule 26(a)(2)(B), the district court responded that Plaintiffs produced the June 15 Report less than a week before the close of discovery. Additionally, because Plaintiffs' discovery responses affirmatively represented to Defendants that they had not retained any expert witnesses, the district court concluded that Defendants were not on notice that Plaintiffs had retained Nelson as an expert prior to the April 21 disclosure deadline.

Plaintiffs question whether Defendants suffered any prejudice at all aside from "los[ing] the advantage of litigating against Plaintiffs armed without an expert." According to Plaintiffs, the district court's only example of prejudice to Defendants was a five-day delay in the official designation of Nelson. Plaintiffs posit that "[w]hether or not the report Nelson provided on that date was substantively deficient, the notification delay was less than one week—disclosed with over seven weeks left in the discovery period."

We hold that the district court did not abuse its discretion by concluding that the third factor favored Defendants. Even when "the degree of prejudice suffered by the [proponent] due to the late designation would not have been great, a district court still has the discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order." *1488, Inc.*, 939 F.2d at 1288–89. For example, in *Geiserman*, we held that designating an expert witness two weeks after the deadline to do so "disrupt[s] the court's discovery schedule and the opponent's preparation." *Geiserman*, 893 F.2d at 791. Additionally, even though Plaintiffs put

Defendants on notice of Nelson's expert designation five days after the deadline, Plaintiffs do not contest that the April 26 Report lacked information required by Rule 26(a)(2)(B). As the district court noted, Plaintiffs submitted their June 15 Report, which contained new information, less than a week before the close of discovery. By that time, Defendants' experts had already submitted their own reports and been deposed. Accordingly, Plaintiffs' conduct deprived Defendants' experts of an opportunity to address the new information in Nelson's June 15 Report before the close of discovery.

For these reasons, we conclude that the district court did not abuse its discretion by finding prejudice to Defendants.

### 4. Fourth factor: availability of a continuance

On the fourth factor—the availability of a continuance—Plaintiffs argue that the district court abused its discretion by failing to consider this factor at all. Plaintiffs also assert that any alleged prejudice could have been cured by allowing Defendants to depose Nelson and providing Defendants an opportunity to offer expert testimony in rebuttal. According to Plaintiffs, we have "repeatedly stated that continuance is the preferred methodology of dealing with a party's attempt to designate a witness out of time."

We hold that the district court's analysis of the continuance factor does not constitute an abuse of discretion. Plaintiffs' assertion that the district court failed to consider the continuance factor whatsoever finds little support in the district court's opinion. After the district court discussed the first three factors in sequential order, it turned to Plaintiffs' refusal to join with Defendants in a motion to continue various deadlines, including Plaintiffs' own expert disclosure deadline. Noting that Plaintiffs refused an opportunity to extend their expert disclosure deadline, the district court reasoned that a court "must have some sanction available to enforce its own

deadlines and rules." Although the paragraph at issue does not explicitly label itself as the district court's analysis of the continuance factor, the content of the paragraph does.

Further, contrary to Plaintiffs' contention, the district court's consideration of Plaintiffs' refusal to join Defendants in seeking a continuance is not an abuse of discretion. Plaintiffs attempt to support their position by pointing to cases in which we have considered the ability of a continuance to cure the specific prejudice alleged. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 374 (5th Cir. 2016) (holding that because a continuance would allow the prejudiced party to produce a rebuttal report and re-depose the proposed expert at issue, the continuance factor weighed in favor of admitting said expert); *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993) (holding that "whatever prejudice would have resulted from permitting [the proposed expert] to testify could have been cured by a continuance"). But Plaintiffs fail to identify any precedent barring courts from considering whether the proponent of an untimely expert report declined an opportunity to cure such untimeliness by refusing to join a motion to continue that would have extended deadlines for both parties and therefore lessened any prejudice to the opposing party. Put another way, Plaintiffs were only willing to have extra time for them, not a similar extension for the Defendants who would need to, of course, have an expert that addressed the Plaintiffs' expert. Such a notion on the part of the Plaintiffs was totally improper.

Additionally, while it is true, as Plaintiffs assert, that "a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time," that doesn't end the matter. *Campbell v. Keystone Aerial Survs., Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998) (quotation omitted). "Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger v.*

*State Farm Mut. Auto Ins.*, 361 F.3d 875, 884 (5th Cir. 2004); *see also AIG Eur., Ltd. v. Caterpillar, Inc.*, 831 F. App'x 111, 116 (5th Cir. 2020) (per curiam) ("While continuances are the preferred means of dealing with untimely expert reports, they are the exception."). We have also recognized that a continuance will "not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders." *Geiserman*, 893 F.2d at 792; *accord 1488, Inc.*, 939 F.2d at 1289 (quoting same).

Here, Plaintiffs demonstrated a lack of respect for the court's scheduling order by producing an untimely and deficient expert report and then "supplementing" its content over the course of two months in an apparent attempt to stretch the court's deadline while, at the same time, declining to agree to a continuance for both sides. We therefore conclude that the district court did not abuse its discretion by deciding that a continuance would not be appropriate.

In sum, after reviewing the district court's analysis of the relevant factors, we conclude that this is not one of the "unusual and exceptional cases" in which the district court's decision to exclude an expert's report and testimony was "*manifestly erroneous*." *See Sandifer*, 907 F.3d at 807 (quotations and alteration omitted) (emphasis in original).

### B. Summary Judgment

Next, we turn to Plaintiffs' argument that the district court erred in granting the Architect Defendants' motion for summary judgment.

The district court granted summary judgment after concluding that Plaintiffs did not produce evidence of the applicable standard of care for

No. 23-30129

Louisiana architects, an essential element of their claims.[7]  Plaintiffs argue that the district court abused its discretion by refusing to consider Nelson's affidavit, which Plaintiffs produced for the first time with their summary judgment opposition, and which they contend provides evidence of the applicable standard of care.  We hold that the district court did not abuse its discretion by excluding Nelson's affidavit.  *See Geiserman*, 893 F.3d at 793 ("Since the court ruled that [the proponent] could not offer expert testimony at trial, [the proponent] cannot use that expert witness's affidavit to oppose summary judgment.").  Accordingly, the district court did not err by granting the Architect Defendants' motion for summary judgment.

## V. Conclusion

For the reasons discussed above, we AFFIRM the district court's orders.

---

[7] Plaintiffs do not dispute on appeal that establishing the applicable standard of care for Louisiana architects is an essential element of their claims, nor do they dispute that, under Louisiana law, they must do so through an expert.