# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 1, 2024

Lyle W. Cayce
Clerk

No. 23-10416

Khaliq Bryant,

*Plaintiff—Appellant*,

*versus*

Ditech Financial, L.L.C.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-252

_____

Before King, Jones, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:[*]

Khaliq Bryant sued to quiet title on property in Texas. The district court dismissed Bryant's suit for failure to state a claim. We reverse.

## I.

In 2003, James Daugherty bought a condominium in Dallas. He obtained a $225,060 mortgage on that condo. Daugherty defaulted on that

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

mortgage in or around 2012 and negotiated a loan modification. We refer to Daugherty's condo mortgage as the "Daugherty Loan."

In 2016, the homeowner's association ("HOA") placed a lien on the property for unpaid dues, foreclosed on the lien, and forced the sale of Daugherty's condo. Sherry Flewellen bought the condo. Then she filed suit in Texas state court to evict Daugherty. The state court ruled in Flewellen's favor. Daugherty lost title to the property, ceased occupying it, and stopped making payments on the Daugherty Loan.

The condo changed hands several more times. Flewellen also failed to pay her HOA dues, so the HOA again foreclosed and sold the property to HUWA LLC. Then the property was sold to Kingdom Group Investments. Finally, Kingdom Group sold the property to Bryant in 2021.

Specialized Loan Servicing, LLC ("SLS") is the successor in interest to Ditech Financial, LLC ("Ditech"). SLS and Ditech serviced the Daugherty Loan. SLS says it can now foreclose on the Daugherty Loan— notwithstanding the intervening sales of the condo to Flewellen, HUWA, Kingdom Group, and Bryant.

In response, Bryant filed a quiet-title action in Texas state court. He asserted that SLS's foreclosure claim was time-barred. *See* Tex. Civ. Prac. & Rem. Code § 16.035. Ditech and SLS removed to federal court and then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted that motion. Bryant timely appealed. Our review is *de novo*. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020).

## II.

### A.

"Jurisdiction is always first." *Louisiana v. DOE*, 90 F.4th 461, 466 (5th Cir. 2024) (quotation omitted). This case arises under 28 U.S.C. § 1332

and involves the citizenship of one or more LLCs—so we must be especially vigilant about our jurisdiction. "This is an evergreen problem in our circuit," because parties often misunderstand the jurisdictional rules that apply to LLCs. *Partners & Friends Holding Corp. v. Cottonwood Mins., LLC*, No. 23-10192, 2023 WL 8649880, at *2 (5th Cir. Dec. 14, 2023); *see, e.g.*, *MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019).

Here, however, Ditech and SLS properly removed to federal court by alleging the citizenship of each member of the LLC. Bryant is a citizen of Texas; Ditech was a citizen of Delaware, Pennsylvania, and Maryland; and SLS is a citizen of Australia. With complete diversity established—and amount in controversy otherwise satisfied—we properly have jurisdiction to review the district court's final order under 28 U.S.C. § 1291.

## B.

Under Texas law, a secured lender "must bring suit for . . . the foreclosure of a real property lien not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(a). A cause of action typically accrues on the note's maturity date. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *accord Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015). That ordinary rule, however, is modified when a note includes an optional acceleration clause. *Holy Cross*, 44 S.W.3d at 566. In that latter circumstance, a cause of action accrues when the note holder exercises the acceleration option. *Ibid.* To exercise an acceleration clause, a lender must send both (1) a notice of intent to accelerate and (2) a notice of acceleration. *Ibid.*

The question of what facts must be pled to sufficiently allege the invocation of an acceleration clause has divided our trial courts. *Compare DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Tr. Co.*, 958 F. Supp. 2d 738, 749 (W.D. Tex. 2013) (dismissing a complaint pleading acceleration "on

information and belief" without "factual support regarding when" notices were sent), *with Kafi, Inc. v. Sand Canyon Corp.*, No. 3:20-cv-354, 2022 WL 3084480, at *11 (S.D. Tex. Aug. 3, 2022) (holding that a complaint stated a claim regarding acceleration and the statute of limitations without specific allegations regarding required notices of acceleration).

The Supreme Court has been clear about requirements at the pleading stage. To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And relatedly, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Bryant's claim meets these standards. He alleges that no payments have been made on the Daugherty Loan "for between ten and fifteen years." ROA.206. That allegation is supported by ample non-conclusory allegations:

- Daugherty fell into delinquency on the Daugherty Loan no later than 2012.

- Daugherty entered a loan modification in 2012.

- Daugherty lost an eviction case in 2016 and also lost all use of the property in that year.

- Daugherty ceased all payments on the Daugherty Loan no later than 2016.

- Property taxes on the condo are approximately $3,000 per year, yet Daugherty's escrow account and corporate advances are approximately negative $70,000.

No. 23-10416

Bryant further alleges that the condo has been sold four times since Daugherty fell into delinquency ten to fifteen years ago. Specifically, the complaint includes these well-pleaded facts:

- The HOA foreclosed on its lien and sold the condo to Flewellen in 2016.

- The HOA foreclosed on another lien and sold the property to HUWA LLC in 2019.

- The HOA foreclosed on another lien and sold the property to Kingdom Group.

- Then Kingdom Group sold the property to Bryant in 2021.

During these sales, Bryant alleges, no one paid a penny on the Daugherty Loan—which makes sense because Daugherty himself was long ago evicted from the condo. And each of the intervening owners (Flewellen, HUWA, Kingdom Group, and Bryant) were strangers to the Daugherty Loan.

Finally, Bryant alleges the Daugherty Loan was accelerated more than four years ago. He supported that allegation with the well-pleaded fact that the Daugherty Loan was subject to acceleration upon default. And beyond Daugherty's default by non-payment of his debts for more than a decade, the Daugherty Loan was also subject to acceleration upon transfer of the property. Given that the condo was transferred four times after Daugherty stopped paying his debts—and that two of those transfers were five or more years ago—the complaint alleges it is "highly likely" that the lender accelerated the Daugherty Loan and hence started § 16.035's limitations period more than four years ago. These well-pleaded facts allow a federal court to infer that the limitations period has run. *Iqbal*, 556 U.S. at 678.

True, Bryant did not allege precisely when the lender sent the acceleration notices required by Texas law. *See Holy Cross*, 44 S.W.3d at 566.

5

But *Twombly* and *Iqbal* do not require such specificity. Bryant alleged, for example, that the Daugherty Loan was subject to acceleration upon sale of the condo; that the condo was indeed sold twice more than four years before quiet-title action; and that therefore, the limitations period bars SLS from foreclosing on the Daugherty Loan. Those facts easily give rise to the inference that the Loan was accelerated with virtual certainty.

And that is precisely the sort of inference the Federal Rules afford to plaintiffs. A plaintiff can allege that objects dropped in water generally get wet; the defendant dropped an object in water; and that it is therefore highly likely the object got wet. Sure, it is possible that the defendant's particular object somehow escaped the water by landing on a boat or an animal. But just as plaintiffs cannot state a claim using speculation, defendants cannot defeat plausible inferences using speculation.

It also bears emphasis that SLS has or had all the necessary information it might need to defeat Bryant's claim. If the Daugherty Loan in fact was never accelerated, notwithstanding a decade or more of defaults, SLS could prove it in minutes: It could file its loan documents along with its answer and win under Federal Rule of Civil Procedure 12(c) or Rule 56. What it cannot do is win dismissal under Rule 12(b)(6) by speculating that a piece of property was sold four times, that the loan went unpaid for 10–15 years, and that the lender nonetheless might've sat idly by, holding an unaccelerated note and watching the property change hands, change hands, change hands, and change hands again without ever protecting its rights.

REVERSED.